**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

PATRICIA M.,

                              Plaintiff,                           No. 3:18-CV-0133
                                                                  (CFH)
              v.

NANCY A. BERRYHILL,
Commissioner of Social Security,

                              Defendant.

_____

**APPEARANCES:**                              **OF COUNSEL:**

Lachman, Gorton Law Firm                      PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorney for plaintiff

Social Security Administration                PETER W. JEWETT, ESQ.
Office of Regional General Counsel            Special Assistant U.S. Attorney
Region II
26 Federal Plaza
New York, New York 10019
Attorney for the Commissioner

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

       Plaintiff Patricia M. brings this action pursuant to 42 U.S.C. § 405(g) seeking review

of a decision by the Commissioner of Social Security ("the Commissioner") denying her

application for disability insurance benefits and supplemental security income ("SSI").  Dkt.

No. 1 ("Compl.").[1]  Plaintiff moves for a finding of disability or remand for a further hearing, and the Commissioner cross-moves for a judgment on the pleadings.  Dkt. Nos. 11, 12. Plaintiff filed a reply.  Dkt. No. 13.  For the following reasons, the determination of the Commissioner is affirmed in part and remanded in part.

## I. Relevant Background

### A. Factual Background

At the time of the hearing, plaintiff was a forty-year-old female who resided alone in a mobile home.  T. 35.[2]  Plaintiff completed tenth grade, and most recently worked part-time as a receptionist at a hair salon.  Id. at 36.  Prior to that position, plaintiff worked as a sale associate at JC Penney.  Id. at 37.

### B. Procedural Background

On November 18, 2014, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits.  T. 205-06.  That same day, plaintiff also filed a Title XVI application for SSI.  Id. at 207-213.  Plaintiff's applications were initially denied on February 9, 2015.  Id. at 86-91.  Plaintiff requested a hearing, and a video hearing was held on March 1, 2017 before Administrative Law Judge ("ALJ") Kenneth Theurer.  Id. at

---

[1]  Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), FED. R. CIV. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. Dkt. No. 6.

[2]  "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Dkt. No. 8.  Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

30-63, 92.  ALJ Theurer determined that plaintiff "ha[d] not been under a disability within the meaning of the Social Security Act from August 20, 2013, through the date of this decision."  Id. at 17.  The Appeals Council denied plaintiff's request for review, making the ALJ's findings the final determination of the Commissioner.  Id. at 1-8.  Plaintiff commenced this action on February 1, 2018.  See Compl.

## C. ALJ Decision

Applying the five-step disability analysis, the ALJ determined that plaintiff had not engaged in substantial gainful activity since August 20, 2013, the alleged onset date.  T. 19.  The ALJ found at step two that plaintiff had the severe impairments of lumbar spondylosis, status post multiple surgeries, and migraine headaches.  Id.  At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 20.  Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).  She can occasionally lift ten pounds, sit for approximately six hours and stand or walk for approximately two hours in an eight-hour day with normal breaks. [Plaintiff] can occasionally climb ramps or stairs, but should never climb ladders, ropes, or scaffolds.  She can also occasionally balance, stoop, kneel, crouch and crawl. [Plaintiff] must alternate from a seated to a standing position two times each hour and for no more than five minutes.  She should avoid unprotected heights or working in proximity to dangerous machinery or moving mechanical parts.

3

Id. at 21.  At step four, the ALJ found that plaintiff was unable to perform any past relevant work.  Id. at 23.  At step five, the ALJ determined that, after consulting with a vocational expert, and considering plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform.  Id.  Thus, the ALJ determined that plaintiff "ha[d] not been under a disability, as defined in the Social Security Act, from August 20, 2013, through the date of this decision."  Id. at 25.

## II. Legal Standard

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).  The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds

facts, we can reject [them] only if a reasonable factfinder *would have to conclude otherwise*." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence. See Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986). However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A). A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based on his or her age, education, and work experience. Id. § 423(d)(2)(A). Such an impairment must be

supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. §

423(d)(3). Additionally, the severity of the impairments is "based [upon] objective medical

facts, diagnoses or medical opinions inferable from the facts, subjective complaints of pain

or disability, and educational background, age, and work experience." Ventura v.

Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing

Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520,

to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).

### III. The Parties' Arguments

Plaintiff first argues that the ALJ's RFC determination is not supported by substantial evidence. Dkt. No. 11 at 11-25. Plaintiff specifically contends that (1) the ALJ failed to account for plaintiff's migraines in the RFC; (2) the ALJ did not properly assess the limiting factors of plaintiff's pain; (3) plaintiff cannot meet the work pace and/or attendance requirements of full time work; (4) plaintiff cannot meet the sitting demands of sedentary work; and (5) the ALJ improperly weighed the medical evidence. See id. Plaintiff also argues that the step five determination is not supported by substantial evidence. Id. at 25-26. Conversely, the Commissioner first argues that the ALJ's RFC finding is supported by substantial evidence. Dkt. No. 12 at 5-10. The Commissioner next argues that the ALJ reasonably weighed the medical opinion evidence. Id. at 10-13. Lastly, the Commissioner argues that the ALJ correctly relied on the vocational expert. Id. at 13-14.

### IV. Analysis

### A. The ALJ's Analysis of Opinion Evidence and Plaintiff's RFC

When evaluating a claim seeking disability benefits, factors to be considered by the ALJ include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant. See Harris v. R.R. Ret. Bd., 948 F.2d 123, 126 (2d Cir.1991). Generally, more weight is given to a treating source. Under the regulations, a treating source's opinion is entitled to controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2) (2005); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). "This rule applies equally to retrospective opinions given by treating physicians." Campbell v. Astrue, 596 F. Supp. 2d 445, 452 (D.Conn. 2009) (citations omitted). Before a treating physician's opinion can be discounted, the ALJ must provide "good reasons." Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight to accord the physician's opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal, 134 F.3d at 503. If other evidence in the record conflicts with the opinion of the treating physician, this opinion will not be deemed controlling or conclusive, and the less consistent the opinion is, the less weight it will be

given.  See Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (citation omitted).  Ultimately, the final determination of disability and a claimant's inability to work rests with the Commissioner.  See id. at 133-34; 20 C.F.R. § 404.1527(e) (2005).

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms.  See Martone, 70 F. Supp. 2d at 150; 20 C.F.R. §§ 404.1545, 416.945.  "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient."  Martone, 70 F. Supp. 2d at 150.  The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work.  See New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960.  If it is determined that a claimant cannot perform past relevant work, "the burden shifts to the Commissioner to determine whether there is other work which the claimant could perform." Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability.  See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified

as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). "An ALJ should consider 'all medical opinions received regarding the claimant.'" Reider v. Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. §§ 404.1527(c)(1)-(6).

The ALJ found that plaintiff could

> perform less than the full range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). She can occasionally lift ten pounds, sit for approximately six hours and stand or walk for approximately two hours in an eight-hour day with normal breaks. [Plaintiff] can occasionally climb ramps or stairs, but should never climb ladders, ropes, or scaffolds. She can also occasionally balance, stoop, kneel, crouch and crawl. [Plaintiff] must alternate from a seated to a standing position two times each hour and for no more than five minutes. She should avoid unprotected heights or working in proximity to dangerous machinery or moving mechanical parts.

T. 21. The regulations define sedentary work as work that

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other

10

sedentary criteria are met.

20 C.F.R. § 416.967(a).

### 1. Relevant Medical Evidence

Plaintiff met with consultative examiner Dr. Gilbert Jenouri in January 2015. See T.

443-47. Dr. Jenouri indicated that plaintiff appeared to be in no acute distress. Id. at 444.

Her gait was antalgic, and she was unable to walk on heels and toes without difficulty. Id.

However, plaintiff's stance was normal, and she did not use assistive devices. Id. Plaintiff

did not need help changing for the examination or getting on and off the examination table.

Id. She was able to squat fully and rise from the chair without difficulty. Id. Plaintiff's

cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary

movement. Id. at 445. Plaintiff's lumbosacral spine extension was ten degrees; flexion

thirty degrees; lateral flexion left fifteen degrees, right twenty degrees; and rotation right

twenty degrees, left fifteen degrees. Id. Plaintiff's SLR right was thirty degrees positive,

left twenty degrees positive, both confirmed seated. Id. Dr. Jenouri indicated that bilateral

sciatic notch tenderness to palpation, left greater than right. Id. Plaintiff had full range of

motion in her elbows, forearms, and wrists bilaterally. Id. Her hip flexion and extension

right was eighty degrees, left seventy degrees; interior rotation right thirty degrees, left

twenty-five degrees; exterior rotation right twenty degrees, left fifteen degrees; backward

extension right twenty-five degrees, left twenty-five degrees; abduction right thirty degrees,

left twenty degrees; and abduction right fifteen degrees, left ten degrees. Id. Plaintiff's

hand and finger dexterity was intact, and her grip strength was 5/5 bilaterally.  Id.

Dr. Jenouri diagnosed plaintiff with low back pain and left lower extremity radiculopathy.  T. 446.  He indicated that plaintiff had "moderate restriction to walking, standing, and sitting long periods, bending, stair climbing, lifting, and carrying."  Id.  Dr. Jenouri noted that plaintiff's prognosis was stable.  Id.  The ALJ granted "considerable weight" to Dr. Jenouri's opinion "because it was consistent with his objective clinical findings."  Id. at 22.

In January 2017, Kristin Isenberg, RPA, completed a questionnaire regarding her treatment of plaintiff.  T. 454-55.  She indicated that plaintiff suffered from chronic back pain and shoulder pain.  Id. at 454.  RPA Isenberg indicated that plaintiff's conditions would cause her pain, fatigue, diminished concentration, diminished work pace, and would require her to rest at work.  Id.  Thus, she opined that plaintiff would be off task more than ten percent but less than fifteen percent of the work day.  Id.  RPA Isenberg further indicated that plaintiff's conditions could produce good days and bad days, and that those bad days would lead to one day or less of missed time from work per month.  Id. at 455.  RPA Isenberg opined that plaintiff could sit for approximately seven hours out of an eight-hour work day, alternating between sitting and standing either every half-hour to one hour.  Id.  She indicated that plaintiff could stand or walk for approximately four hours out of an eight-hour work day.  Id.  RPA Isenberg nted that plaintiff could frequently lift up to five pounds, and occasionally lift over ten pounds.  Id.

The ALJ granted RPA Isenberg's opinion "considerable weight," noting that her

assessment was persuasive due to her "long treating relationship with [plaintiff] and [that] most of her opinions [were] consistent with the record as a whole." T. 22. However, the ALJ indicated that he did "not find her opinion with respect to [plaintiff] remaining on task or being absent from work sufficiently supported to warrant incorporation into [plaintiff's] residual functional capacity" because plaintiff previously denied having problems paying attention, completed various daily activities of living, and sustained a part-time job. Id.

In January 2017, treating provider Cori Pane, FNP completed a questionnaire regarding her treatment of plaintiff. T. 450-51. FNP Pane indicated that plaintiff suffered from chronic low back pain radiating into bottom legs, failed lumbar fusion, and neuropathic pain into both legs. Id. at 450. She indicated that plaintiff's conditions would cause pain, fatigue, diminished concentration, diminished work pace, and required plaintiff to rest at work. Id. Thus, she opined that plaintiff would be off task more than thirty-three percent of the day. Id. FNP Pane further indicated that plaintiff's conditions could produce good days and bad days, and the bad days would lead to more than four days of missed work per month. Id. at 451. FNP Pace opined that plaintiff could sit for approximately three hours out of an eight-hour work day, alternating between sitting and standing every sixty minutes. Id. She also indicated that plaintiff could stand/walk for approximately two hours out of an eight-hour work day. Id. Moreover, plaintiff could lift up to ten pounds occasionally, but never over ten pounds. Id.

The ALJ granted FNP Pane's opinion "somewhat less weight" because the limitations FNP Pane assessed were "inconsistent with [plaintiff's] testimony that she

work[ed] up to seven-hour shifts as a receptionist and spen[t] much of that time sitting." T. 23. The ALJ also found that FNP Pane's opinions that plaintiff would be off task and absent from work "unsupported for the reasons already articulated." Id.

In February 2017, plaintiff's treating neurosurgeon Dr. Darryl DiRisio stated that plaintiff had "multiple lumbar procedures to include a lumbar fusion at L5, S1." T. 622. He stated that plaintiff suffered from severe low back pain, and lower extremity pain, and had severe pain on most days. Id. Dr. DiRisio opined that plaintiff was seventy percent disabled from being able to work, and he believed plaintiff's condition to be permanent. Id. He noted that plaintiff is currently able to work part time, two to three days per week. Id. Dr. DiRisio indicated that plaintiff had "some good days, but on most days, she does have severe pain." Id.

The ALJ granted Dr. DiRisio's opinion "less weight" because "his statement is conclusory and addresses issues that are exclusively reserved to the Commissioner[;] [i]n fact, he declined completing a functional questionnaire, indicating he was unable to determine [plaintiff's] specific physical capacities, or whether she would be off-task or absent from work." T. 23. The ALJ also noted that Dr. DiRisio's opinion "merely recites what [plaintiff] is currently doing: working part-time, two to three days a week. It does not discuss what she actually does in that job, or describe the most that [plaintiff] is capable of performing on a sustained basis, as is intended by a [RFC] finding." Id.

14

### 2. Failure to Consider Migraine Headaches,
### Neck and Shoulder Impairments, and Pain

### i. Migraine Headaches

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to account for plaintiff's migraines in his RFC analysis. Dkt. No. 11 at 11. As plaintiff notes, at step two, the ALJ found that plaintiff's migraines amounted to a severe impairment. T. 19. Plaintiff also testified about her migraines and their effects at the March 2017 hearing. At the hearing, plaintiff testified that she "get[s] an onset of a migraine at least weekly" and has headaches "all the time." Id. at 50-51. Plaintiff noted that if she feels the onset of a migraine, she takes Excedrin Migraine, which sometimes combats the symptoms. Id. at 51. Plaintiff indicated that her migraines lasted "six to eight hours or overnight, sometimes." Id. at 52. The migraines left her "exhausted" where she "just want[ed] to fall asleep" and be "lazy." Id. Plaintiff also noted fatigue and diminished concentration and focus in conjunction with her other pain. Id. at 52, 53. Plaintiff testified that she had to take a migraine pill the night before the hearing "because [she] had a[n] onset of one," but, prior to that, she had not have a "real bad one" in three or four weeks. Id. at 50.

Pursuant to the applicable regulations, the Commissioner must determine the plaintiff's "residual functional capacity based on all the relevant evidence in the case record," 20 C.F.R. § 404.1545(a)(1), and must consider "all of [a claimant's] medically determinable impairments of which [the Commissioner] is aware." 20 C.F.R. § 404.1545(a)(2). Thus, "[t]he RFC assessment must include a discussion of why reported

15

symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8P, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7 (SSA July 2, 1996).

Here, the ALJ was aware of plaintiff's migraines, as he found them to be a severe impairment at step two, and plaintiff testified as to her symptom-related functional limitations at the oral hearing. T. 19, 50-53. Further, the vocational expert testified that there is a reduction in employment numbers if someone is found to be off task between the ten and fifteen percent range, and if the individual were off task more than fifteen percent of the day and missed more than one day per month, he or she would be unemployable. Id. at 59-60. At the hearing, plaintiff testified that her migraines generally lasted six to eight hours and left her fatigued with diminished concentration and focus. Id. at 51-52. Moreover, two of plaintiff's treating providers RPA Isenberg and FNP Pane opined that plaintiff would be off task between ten and fifteen percent and more than thirty-three percent, respectively. Id. at 450, 454. Thus, if plaintiff's limitations were found to exist, the vocational experts testimony strongly suggests that plaintiff may not be able to transition to other work that exists in the national economy due to her capacity to be off task during the work day.

Although the ALJ determined that plaintiff's migraines were severe, and plaintiff and the vocational expert testified as to reported limitations due to her migraines, the ALJ's RFC analysis contains only two sentences regarding plaintiff's migraines. See T. 21-23

(setting forth the RFC analysis).  The ALJ noted that "[d]ue to pain from her back and migraine headaches, [plaintiff] ha[d] difficulty sleeping and experiences fatigue during the day.  She also testified that her pain interferes with her concentration and focus."  Id. at 21-22.

Further, the ALJ's RFC analysis discusses at length plaintiff's ability to perform sedentary work based on her back impairments.  See T. 21-23.  To the extent that the ALJ does talk about whether plaintiff would be off task or absent from work, the ALJ does not reference plaintiff's migraines.  Instead, in discrediting the medical providers' opinions regarding plaintiff's propensity to be off task and absent, the ALJ cites that plaintiff denied having problems paying attention in her function report, as well as her ability to drive, shop, handle her own money, manage her household, and work part-time as a receptionist.  Id. at 22-23.  Thus, there is no mention of plaintiff's migraines or the potential limiting impact plaintiff's alleged symptoms could have on the RFC.

Moreover, the ALJ does not explain why he failed to credit plaintiff's testimony regarding the limiting effects of her migraines.  As such, the Court cannot determine whether the ALJ properly considered the limiting effects of plaintiff's migraines in making the RFC determination.   The ALJ is required to provide rationale in the written decision sufficient to allow this Court to conduct an adequate review of her findings.  See Booker v. Astrue, No. 07-CV-0646, 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984));

<u>Hickman ex rel. M.A.H. v. Astrue</u>, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (quoting <u>Steele v. Barnhart</u>, 290 F.3d 936, 941 (7th Cir. 2002)). The ALJ's provided rationale does not allow the Court to make that assessment.

Accordingly, because the Court cannot determine whether the ALJ's findings are supported by substantial evidence, remand on this ground is necessary.

### ii. Neck and Shoulder Impairments

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to account for plaintiff's neck and shoulder impairments in his RFC analysis. Dkt. No. 11 at 12-13. Plaintiff also suggests that the ALJ erred by failing to find plaintiff's neck and shoulder impairments severe at step two. <u>Id.</u>

To the extent that plaintiff contends that the ALJ failed to find plaintiff's shoulder and/or neck impairment severe at step two, this argument is invalid. <u>See</u> Dkt. No. 11 at 12. This Court has indicated that the failure to find a specific impairment severe at step two is harmless where the ALJ concludes there is at least one other severe impairment, the ALJ continues with the sequential evaluation, and the ALJ provides explanation showing he adequately considered the evidence related to the impairment that is ultimately found non-severe. <u>See</u> <u>Fuimo v. Colvin</u>, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing <u>Dillingham v. Astrue</u>, No. 09-CV-0236, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), <u>Report-Recommendation adopted by</u> 2010 WL 3893906 (N.D.N.Y. Sept. 30,

2010)); see also Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order) (finding that any error in failing to find the plaintiff's anxiety and panic disorder severe at step two would be harmless because the ALJ found other severe impairments present, continued through the sequential evaluation process, and specifically considered the plaintiff's anxiety and panic attacks at those subsequent steps).  Because the ALJ continued on with the sequential evaluation, and it is clear that he considered evidence associated with plaintiff's impairments, any alleged error is harmless.

As the Commissioner notes, the ALJ accounts for plaintiff's limitations associated with his neck and shoulder impairments in his RFC analysis.  See Dkt. No. 12 at 7.  In assessing Dr. Jenouri's opinion, the ALJ noted that plaintiff had "some reduced motion in her shoulders . . . , although not as significantly as in her lumbar spine," and that she had full range of motion in her cervical spine, elbows, forearms, wrists, and knees.  T. 22, 445. Moreover, the record indicates that plaintiff's neck pain had dissipated by her January 2017 appointment with FNP Pane.  Id. at 544 ("She reports a couple of weeks ago she was reaching for something with her right arm and felt a pop in her neck.  She experienced severe pain for a few minutes and since then her previous symptoms have completely resolved.").  At that appointment, and as the ALJ notes in his RFC analysis, plaintiff appeared in no acute distress and had minimal tenderness to palpation.  Id. at 545. Although she had pain on lumbar flexion and extension, her lumbar spine and musculature were nontender with full range of motion in all planes without increased pain.  Id. at 23, 545. Plaintiff also had no palpable trigger points, and full strength throughout her lower

extremities.  Id. at 23, 546.

Although plaintiff argues that the ALJ's failure to include restrictions associated with impairments to plaintiff's neck and shoulder  in the RFC was reversible error, the Court notes that in formulating a claimant's RFC, an ALJ does not have to adhere to the entirety of one medical source's opinion. See Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").  Further, the Court's review of the record supports the ALJ's decision to omit these limitations.  As such, insofar as the ALJ properly assessed plaintiff's shoulder and neck impairments, and remand on this ground is not necessary.

### iii. Limiting Effects of Plaintiff's Pain

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to account for the limiting effects of plaintiff's pain in his RFC analysis.  Dkt. No. 11 at 13-14.  In assessing the limitations caused by plaintiff's pain symptoms

> [t]he ALJ must perform a two-step analysis.  First, based upon the objective medical evidence, the ALJ must determine whether the impairments could reasonably be expected to produce the pain or other symptoms alleged . . . .  Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work.  Where the

> alleged symptoms suggest that the impairment is greater than demonstrated by objective medical evidence, the ALJ will consider other factors, such as daily activities, the location, duration, frequency and intensity of symptoms, the type, effectiveness and side effects of medication, and other treatment or measures to relieve those symptoms.

Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 81 (N.D.N.Y. 2018).

Here, the ALJ's decision clearly indicates that he analyzed not only plaintiff's medical records but also her testimony regarding her complaints of pain. See T. 21. The ALJ acknowledged that plaintiff had "pain in her back that extended into her buttocks and lower extremities, particularly on her left side." Id. As such, she had difficulty lifting, standing, walking, sitting, climbing stairs, kneeling, squatting, and bending. Id. The ALJ also noted that plaintiff testified that she could lift fifteen to twenty pounds, sit for ten to fifteen minutes at a time, stand in one spot for five to seven minutes at a time, and walk for about fifteen minutes at a time. Id. Plaintiff noted that she sometimes "move[s] around a lot" when sitting. Id. Plaintiff also indicated difficulties sleeping, and that her pain interfered with her concentration and focus. Id. at 21-22.

The ALJ found that, after considering plaintiff's "alleged symptoms and the effects they purportedly had on her daily functioning, . . . the record as a whole does not support limitations beyond those provided for within the above-found residual functional capacity." T. 22. Specifically, the ALJ relied on diagnostic testing that showed mild to moderate abnormalities. Id. at 22-23. The ALJ further considered that plaintiff's January 2017 medical appointment showed minimal abnormalities with plaintiff demonstrating "full range of motion in all planes without increased pain." Id. at 23, 545.

In addition, the ALJ stated that plaintiff was able to drive, shop, handle her own money, and manage her household.  T. 22, 43 (testifying that she is able to cook for herself, shower, dress, shop, and manage her finances), 267-76 (function report noting the same).  Based on the above, the ALJ concluded that plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence and other evidence in the record.  Id. at 23.   The Court will not now reweigh that evidence which was before the ALJ.  See Warren v. Comm'r of Soc. Sec., No. 15-CV-1185, 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing . . . .  [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'"), report and recommendation adopted by 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016) (quoting Lefford v. McCall, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)); Vincent v. Shalala, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing Carroll, 705 F.2d at 642); Lewis v. Colvin, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that it is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence' where that resolution is supported by substantial evidence) (quoting Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012); citing Lamay, 562 F.3d at 507).  Accordingly, the Court finds that the ALJ properly evaluated the evidence concerning the limiting effects of plaintiff's pain, and remand on this ground is not

necessary.

### 3. Work Pace and/or Attendance Requirements

Plaintiff argues that she cannot meet the work pace and/or attendance requirements of full-time work. Dkt. No. 11 at 14-17. In rendering her RFC determination, the ALJ discredited RPA Isenberg and FNP Pace's opinions regarding work pace and attendance because they were inconsistent with testimony, activities of daily living, and ability to work part-time. T. 22-23. As stated above, the Court found that remand is necessary as it is unclear whether the ALJ properly assessed plaintiff's migraine headaches and whether symptoms associate with those headaches would affect the RFC determination. As such, remand is required to assess plaintiff's work pace and attendance in conjunction with plaintiff's headaches.

### 4. Sitting Demands of Sedentary Work

Plaintiff argues that she cannot meeting the sitting demands of sedentary work, and that "[t]he ALJ's conclusion that [p]laintiff can meet this requirement is not supported by substantial evidence and is the product of factual and legal error." Dkt. No. 11 at 17. The ALJ granted "considerable weight " to Dr. Jenouri's opinion that plaintiff had "moderate 'restrictions'" for sitting for long periods. T. 22, 446. It has been held that moderate limitations to a plaintiff's capability to sit is consistent with sedentary work. See <u>Rodriguez v. Barnhart</u>, No. 01 CIV. 7373 (SAS), 2002 WL 31307167, at *5 (S.D.N.Y. Oct. 15, 2002)

("The treating and consulting physicians opined that plaintiff was capable of sitting, standing, walking, lifting, carrying, and handling of objects with moderate limitations. These medical opinions were consistent with the ALJ's finding that plaintiff was capable of performing sedentary work."); Tompkins v. Colvin, No. 13-CV-911, 2015 WL 10382575, at *6 (W.D.N.Y. Dec. 23, 2015), report and recommendation adopted, 2016 WL 792428 (W.D.N.Y. Mar. 1, 2016) (holding that a "mild to moderate limitation in prolonged sitting and standing is accommodated by the ALJ's limitation to light work as well as normal work breaks."); Burdick v. Astrue, No. 2013 WL 3713417, at *7 (W.D.N.Y. July 12, 2013) (concluding that any restriction on prolonged sitting and standing was consistent with the full range of sedentary work).

Dr. Jenouri's opinion is consistent with RPA Isenberg's opinion that plaintiff could sit for approximately seven hours in an eight-hour work day. T 455. Moreover, contrary to plaintiff's argument that the ALJ did not set forth a time limit for prolonged sitting, see Dkt. No. 13-1 at 2, the ALJ expressly stated that plaintiff could sit for six hours *with normal breaks*. T. 21 (emphasis added). "Normal work breaks and meal periods split an eight hour workday into approximately two hour periods." Brink v. Colvin, No. 1:14-CV-00940 (MAT), 2017 WL 2531711, at *2 (W.D.N.Y. June 12, 2017) (citing SSR 96-9p, 1996 WL 374185 at *6 ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals.")). As such, the sitting portion of the ALJ's RFC determination is consistent with

FNP Pace's opinion that plaintiff could sit for approximately three hours in an eight-hour work day. T. 451. Thus, the ALJ's determination that plaintiff could perform limited sedentary work is supported by substantial evidence. Accordingly, remand on this ground is not necessary.

In sum, the ALJ has the responsibility of reviewing all the evidence before him, resolving inconsistencies, and making a determination consistent with the evidence as a whole. See Bliss v. Colvin, No. 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015). "[I]t is the province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests upon 'adequate findings supported by evidence having rational probative force.'" Camarata v. Colvin, No. 14-CV-0578, 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) (quoting Galiotti v. Astrue, 266 F. App'x 66, 67 (2d Cir. 2008) (summary order)). Absent RPA Isenberg and FNP Pace's opinions regarding time off task and absenteeism, as discussed supra, it is clear from the ALJ's overall decision that he appropriately considered the evidence before him, including the numerous opinions of record.

## B. Step Five Determination

Because remand is necessary and the ALJ will be required to address the above-noted deficiencies in considering the opinion evidence when issuing a new decision, the Court declines to reach a finding regarding plaintiffs arguments on Step Five. Dkt. No. 11 at 25-26. However, on remand, the ALJ should also conduct a new Step Five

determination as part of that review.

## IV. Conclusion

**WHEREFORE**, for the reasons state above, it is hereby

**ORDERED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED IN PART and DENIED IN PART**: the motion is granted insofar as the matter will be remanded to the Commissioner for the reasons stated herein, but denied insofar as the Court determines that the ALJ properly determined plaintiff's RFC as to her neck and shoulder impairments, limiting effects of pain, and sitting requirements; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED IN PART and GRANTED IN PART**: the motion is granted insofar as the Court determines that the ALJ did not err with regard to her neck and shoulder impairments, limiting effects of pain, and sitting requirements; and it is further

**ORDERED**, that this case be **REMANDED**, pursuant to Sentence Four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision and Order.

**IT IS SO ORDERED**.

Dated:     February 14, 2019
          Albany, New York

Christian F. Hummel
U.S. Magistrate Judge